```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
LEANNE BAXTER,                         :
                                       :
                      Plaintiff,       :    24cv6241 (DLC)
                                       :
            -v-                        :    OPINION AND
                                       :    ORDER
SWIFTSHIFT INC., et al.,               :
                                       :
                      Defendants.      :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff Leanne Baxter:
Daniela Elisabeth Nanau
Law Offices of Daniela Nanau, P.C.
89-03 Rutledge Avenue
Glendale, NY 11385

For defendants Swiftshift Inc. and Guy Katsav, in his individual
and professional capacities:
Heather Elise Griffin
Talysia Francis
Gordon Rees Scully Mansukhani LLP
One Battery Park Plaza, 28th Floor
New York, NY 10304

Samuel Joseph Rubin
Goodwin Procter, LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

DENISE COTE, District Judge:

Leanne Baxter has sued her former employer, Swiftshift Inc.

("Swiftshift"), and Guy Katsav, Chair of Swiftshift's Board of

Directors (collectively, "defendants"), under state and city law

for employment discrimination, unlawful retaliation, and unpaid

wages.  The defendants moved to dismiss the claims pursuant to Rule 12(b)(6), and to strike certain allegations pursuant to Rule 12(f), Fed. R. Civ. P.  For the following reasons, the motion to dismiss is granted in part and the motion to strike is denied.

## Background

The following facts are taken from the first amended complaint ("FAC").  Only the facts necessary to decide this motion are included.  They are assumed to be true for the purposes of this motion.

Swiftshift was engaged in the business of developing technology used by home healthcare service providers.  From 2016 until the present, it maintained offices in New York.

Baxter married Assaf Shalvi in England in 2012.  Shalvi founded Swiftshift that same year, becoming the company's Chief Executive Officer ("CEO"), and the couple moved to New York in October of 2016.  Baxter joined Swiftshift's payroll in January of 2019 to work as the head of its Human Resources ("HR") department, and initiated divorce proceedings against Shalvi in 2022.  In June of 2023, Shalvi eliminated its HR department and terminated Baxter's employment.  A more detailed description of the FAC's allegations follows.

I.   Baxter's Role at Swiftshift

Baxter alleges that, beginning in 2012, while she and Shalvi still lived in England, she worked at Swiftshift as an unpaid employee.  Shalvi promised Baxter throughout this period that she would receive an equity stake in Swiftshift as one of its "co-founders."  Baxter's ownership of Swiftshift was never reduced to writing.  In October 2016, Baxter, Shalvi, and their first son moved to New York City.  Shalvi obtained a visa to work in the United States, but Baxter did not obtain her own visa for another two years.[1]  Meanwhile, she continued her work for Swiftshift as an unpaid employee.

In January 2019, Baxter joined Swiftshift as its Director of HR.  Baxter was at that time the only woman on the senior executive team.  In 2020, Amy Nelson became the second woman on the senior executive team, assuming the role of Chief Operating Officer ("COO").

Baxter alleges that in her tenure at Swiftshift as Director of HR she was paid less than her male colleagues on the senior executive team.  After Baxter complained about the pay disparity in 2019, Swiftshift's Chief Financial Officer ("CFO") recommended that her compensation be increased.  Baxter asserts

---

[1] The FAC does not identify the date on which Baxter received her work visa.

that this increase was not implemented.  In 2021, however, Swiftshift increased her salary, although it remained lower than that of the male members of the senior executive team.  In October 2021 and May 2022, Baxter again requested pay increases but did not receive received them.

The FAC further alleges that Nelson was also paid less than her male peers and was subjected to "condescending" treatment, micro-management, and "sexist remarks" by Shalvi.  Nelson reported Shalvi's behavior to Swiftshift's Board of Directors "several times," including by communicating directly with Katsav.  Katsav and the Board of Directors, Baxter alleges, did "nothing" to remedy Nelson's complaints.  At some point in 2022, Nelson quit.

II. October 2022 Temporary Restraining Order

In October 2022, Baxter obtained a Temporary Restraining Order ("TRO") from New Jersey family court, which required Shalvi to vacate the couple's home.[2]  Baxter alleges that after the TRO was issued, she worked from home "for several weeks."

The FAC alleges that Shalvi's mistreatment of Baxter in the workplace worsened following the issuance of the TRO.  Among

---

[2] Also in October 2022, before the issuance of the TRO, Baxter discovered that Shalvi had been surreptitiously recording conversations with her using equipment in their home and had placed a tracker in their family car to "monitor her movement."

other things, she asserts that Shalvi would issue "ever-changing" directives to her and, if she did not immediately comply, would threaten to terminate her employment; screamed at her; harassed and humiliated Baxter in meetings, including by ignoring her comments and cutting her off mid-sentence; and openly and unfairly compared Baxter to other lower-level employees who, unlike Baxter, did not take time off.  The FAC further alleges that Shalvi's treatment of Baxter in the workplace was so extreme that an employee, who Baxter had never met outside of a single meeting, offered her advice on how to get assistance as a survivor of domestic violence.

The FAC asserts that Shalvi treated other female employees similarly -- including by chiding them for "bringing emotions" into their work.[3]  It alleges that Shalvi did not subject male employees to similarly harsh treatment.

III. Baxter's 2023 Return to Office and February 2023 Complaint

The TRO was lifted in early 2023, at which point Baxter resumed working from Swiftshift's Manhattan offices at least one day a week.  On February 2, Shalvi told Baxter in a meeting with the company's CFO and Chief Growth Officer, that her salary

---

[3] In 2020, Swiftshift acquired Golden Care, a pediatric home healthcare agency, to "beta-test" Swiftshift's technology.  The FAC suggests that the female employees that Shalvi mistreated were employed Golden Care.

would be cut.  Baxter questioned the decision and in response
Shalvi laughed at her and threatened to terminate her employment
if she brought up the issue during work hours.  On February 3,
Baxter sent an email to Shalvi in which she appealed the
decision to cut her salary and Shalvi's actions during and after
the February 2 meeting.  The FAC alleges that Baxter later told
Shalvi to forward her harassment complaint to the Board of
Directors and that Shalvi, in response, screamed at her.

On February 7, Shalvi wrote to Baxter that her compensation
would be reduced by $20,000 -- to $90,000.  At that time,
Shalvi's  salary was reduced from $220,000 to $150,000.

IV.  Outside Investigation and Termination

On April 17, Katsav responded to Baxter's February 3 email
complaint.  Katsav informed Baxter that the Board of Directors
had hired an attorney, Tracey Levy, to conduct an investigation.
In a meeting, Baxter detailed to Levy the alleged discriminatory
treatment she faced at Swiftshift.  This included: never being
given equity in the company; having lower pay than other
executive employees; "hostil[e]" and "abus[ive]" treatment by
Shalvi, particularly after Baxter obtained the TRO; and having
her salary cut "after she complained to Swiftshift's Board of
Directors" about Shalvi's retaliatory treatment.

Baxter alleges that following her meeting with Levy, Shalvi sent Baxter "harassing messages."  The FAC asserts that Baxter tried to report this conduct to Katsav, but Katsav ignored her telephone calls and emails.

On May 30, Shalvi wrote to Baxter that he was "granting" her "300,000 stock options" given her "willingness to take a salary cut and help the business move."  Baxter responded that she had "never agreed to take a salary cut."  Less than a week later, on June 5, 2023, Swiftshift eliminated its HR Department and terminated Baxter's employment.

V.    Post-Termination Events

Baxter and Shalvi reached an agreement in New Jersey family court pursuant to which Shalvi would pay Baxter spousal and child support.  Nevertheless, the FAC asserts that Shalvi has failed to pay child support, and that Swiftshift has failed to comply with a March 2024 wage garnishment order issued by the New Jersey family court.  On October 21, 2024, Swiftshift terminated Shalvi's service as an employee of the company, although he continues to work for Swiftshift as an independent contractor.

VI.   Procedural History

Baxter filed this action against Swiftshift and Katsav on August 19, 2024.  The defendants moved to dismiss the claims on

7

January 15, 2025, at which point Baxter was given the opportunity to amend her complaint and was warned that it was unlikely she would have a further opportunity to amend.

On February 14, Baxter filed the FAC. Baxter first claims that the defendants failed to pay her wages for work performed before January 2, 2019, in violation of the New York Labor Law, §§ 190, 650 et seq. ("NYLL"). Next, Baxter claims that the defendants discriminated against her on the basis of her sex and her status as a domestic violence victim, in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"). Finally, she asserts she was retaliated against for engaging in protected activity under the NYSHRL and the NYCHRL.

The defendants renewed their motion to dismiss and, in the alternative, to strike certain allegations from the FAC on March 7, pursuant to Rule 12(b)(6) and 12(f), Fed. R. Civ. P. The motion became fully submitted on April 18.

## **Discussion**

I.  Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, a party "must plead enough facts to state a claim to relief that is plausible on its face." Green v. Dep't of Educ.,

8

16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting <u>Bell Atl. Corp.</u> <u>v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Vengalattore</u> <u>v. Cornell Univ.</u>, 36 F.4th 87, 102 (2d Cir. 2022 (quoting <u>Ashcroft v. Iqbal</u>, 566 U.S. 662, 678 (2009)). In evaluating if a claim is sufficiently plausible to withstand dismissal, a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." <u>Revitalizing</u> <u>Auto Communities Env't Response Tr. v. Nat'l Grid USA</u>, 92 F.4th 415, 438 (2d Cir. 2024).

A.    NYLL Minimum Wage Claim

Baxter first asserts a minimum wage claim under the NYLL. NYLL §§ 190, 650 <u>et seq.</u>  The parties agree that the statute of limitations for NYLL claims is six years. NYLL § 663(3). Since this action was filed on August 19, 2024, Baxter's claim for unpaid wages concerns the three and a half months between August 18, 2018 and January 2, 2019, the date she formally joined Swiftshift. The defendants contend that Baxter's claim under the NYLL fails because the FAC does not plausibly plead the existence of an employer-employee relationship with defendants before January 2019. Their motion is granted.

9

The Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the NYLL define "employee in nearly identical terms." Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) (citation omitted). Accordingly, courts "construe the NYLL definition" of employee "as the same in substance as the definition in the FLSA." Id. (citation omitted).

The factors to consider in the determination of whether an employment relationship exists frequently appear in cases that distinguish between employees and independent contractors. In making this distinction, courts assess "the underlying economic reality of the relationship." Saleem v. Corp. Transportation Grp., Ltd., 854 F.3d 131, 139 (2d Cir. 2017). A court focuses on "the totality of the circumstances" to address the "ultimate concern whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." Id. (citation omitted).[4]

---

[4] The following factors apply in this totality-of-the-circumstances analysis under the FLSA:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

10

Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Bynog v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (2003). "Factors relevant to assessing control" -- and applied particularly where attempting to discern if an individual is an employee or an independent contractor -- "include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Id.

Baxter has not plausibly alleged that an employment relationship existed between her and Swiftshift between August 18, 2018 and January 2, 2019. The FAC pleads that in August 2018 Baxter worked at Swiftshift's New York City offices for 30 hours per week, and that from September to December she worked 10 hours each week from her home, due to a need to care for the couple's children. The FAC alleges that Baxter was made a formal, paid employee on January 2, 2019. The FAC does not include any description of the work she performed for Swiftshift during this brief period before January 2, 2019  The FAC does

---

Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 67 (2d Cir. 2003) (citation omitted).

not, for instance, specify the tasks she performed or who assigned or supervised her work.  The FAC simply does not provide the defendants with the fair notice to which they are entitled or plead a claim of unpaid wages entitling her to compensation.

Baxter points to allegations concerning work she did between 2016 and 2018 but does not dispute that the FAC fails to describe what work she performed during the relevant period between August 18, 2018 and January 2, 2019.  The defendants pointed to the absence of this information when they moved to dismiss her initial complaint.[5]  Baxter's inability to correct this deficiency dooms her claim for unpaid wages.

B.   State and City Discrimination Claims

The defendants next move to dismiss Baxter's claims that defendants discriminated against her on the basis of her sex and her status as a domestic violence victim.  The motion to dismiss these claims of discrimination is denied.

To state a claim for discrimination under the NYSHRL and NYCHRL, "the plaintiff need only show differential treatment -- that she is treated less well -- because of a discriminatory

---

[5] In their January 15, 2025 motion to dismiss, the defendants argued, among other things, that the complaint "is bereft of any details as to what type of work she performed, what her position was, how much she was to be compensated, who supervised her work, etc."

12

intent," regardless of that treatment's severity and
pervasiveness. Mihalik v. Credit Agricole Cheuvreux N. Am.,
Inc., 715 F.3d 102, 110 (2d Cir. 2013); see also Qorrolli v.
Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024)
(aligning NYSHRL claim for retaliation with NYCHRL). Sex-based
discrimination is one form of unlawful discrimination under both
state and city law, as is discrimination based on an
individual's status as a victim of domestic violence. N.Y.
Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a),(27)(a).
In addition, state and local law "make actionable any form of
sex-based compensation discrimination." Lenzi v. Systemax,
Inc., 944 F.3d 97, 110 (2d Cir. 2019) (citation omitted).

Discrimination claims under these laws are subject to the
well-known burden-shifting framework adopted in McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973). On a motion to
dismiss, however, only the first step in that framework -- the
plaintiff's burden to allege a prima facie case of
discrimination -- is at issue. Littlejohn v. City of New York,
795 F.3d 297, 311 (2d Cir. 2015). To plead a prima facie case
under Title VII, a plaintiff must allege that she "(1) is a
member of a protected class, (2) was qualified, (3) suffered an
adverse employment action, and (4) has at least minimal support
for the proposition that the employer was motivated by

13

discriminatory intent." <u>Buon v. Spindler</u>, 65 F.4th 64, 79 (2d
Cir. 2023) (citation omitted).  Unlike under Title VII, however,
a plaintiff is not limited under state and city law to
challenging "materially adverse employment actions" or even
tangible conduct, such as hiring or firing."  <u>Mihalik</u>, 715 F.3d
at 110, 114.

As to the fourth prong, a plaintiff may make a showing that
the defendant's action was motivated by discriminatory intent by
"alleging facts . . . that indirectly show discrimination by
giving rise to a plausible inference of discrimination."  <u>Vega
v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 (2d Cir.
2015).  Several types of evidence may support such an inference,
including criticism by the employer in "degrading terms" that
reference the protected characteristic, "invidious comments
about others in the employee's protected group," "the more
favorable treatment of employees not in the protected group,"
"the sequence of events leading to the plaintiff's discharge,"
and "an employer replac[ing] a terminated or demoted employee
with an individual outside the employee's protected
class."  <u>Littlejohn</u>, 795 F.3d at 312-13 (citation omitted).

1.   Disparate Pay

Baxter states a plausible claim of disparate pay under
state and city law.  There is no dispute that the FAC satisfies

14

the first two prongs of the prima facie case.  As to the third
prong, the FAC alleges that Baxter was paid less than her male
counterparts on the senior executive team and that Nelson, the
only other woman on the senior executive team team, was also
paid less than their male counterparts.  See Littlejohn, 795
F.3d at 312 ("An inference of discrimination can arise from
circumstances including, but not limited to, . . . the more
favorable treatment of employees not in the protected group."
(citation omitted)).

The defendants argue that Baxter's alleged comparators,
including the CFO, are "inappropriate on their face" because
"based on title alone" they are not "similarly situated" to
Baxter's role as the Director of the HR department.  This
argument may succeed at trial, but the FAC has adequately
pleaded this claim of gender-based wage discrimination.

2.   Hostile Work Environment

Baxter has also stated a claim for hostile work environment
under state and city law.  Under state and city law, a plaintiff
need not allege "either materially adverse employment actions or
severe and pervasive conduct."  Mihalik, 715 F.3d at 114.
Baxter has met the low burden under these statutes by alleging
that she was treated "less well" because of her sex.  Id. at
110 (citation omitted).  The FAC alleges that Shalvi subjected

her to threatening rants, ignored her comments in meetings, cut her off mid-sentence, and reprimanded her when she did not immediately comply with his directives -- behavior that Shalvi did not use with male co-workers.  The FAC alleges that Nelson was also subjected to condescending and sexist remarks.

For similar reasons, Baxter has stated a claim for hostile work environment based on her status as a domestic violence victim.  Baxter asserts that the discriminatory treatment she faced by Shalvi became more severe after she obtained a TRO from the New Jersey family court because of his mistreatment of her in their home.  This is sufficient to state a claim that defendants created a hostile work environment based on her status as a victim of domestic violence.

The defendants assert that they were not aware that Baxter was a victim of domestic violence.  But Baxter alleges that Shalvi, Swiftshift's CEO, was the perpetrator of this alleged domestic violence, so at a minimum he knew about Baxter's status.  This is a not a case, therefore, where discriminatory intent is inferred "from circumstances unknown" to the persons who participated in the adverse employment action.  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82 (2d Cir. 2005).

Finally, the defendants contend that Baxter's allegations of hostile conduct "occurred in the context of her personal

16

divorce from Shalvi and included disputes over" matters personal
to their relationship, such as "their shared bank account."  In
the same vein, they suggest that Baxter's workplace allegations
"are at best petty slights that are not actionable."  As
explained, Baxter has cleared the low bar of pleading that she
was treated "less well" because of her sex and her status as a
domestic violence victim.  Mihalik, 715 F.3d at 111.

     C.   State and City Retaliation Claims

     Next, Baxter alleges unlawful retaliation due to complaints
she made about discrimination in February and April 2023 to
Shalvi, Katsav, and Levy.  The defendants move to dismiss these
claims as well.  For the reasons stated below, the defendants'
motion to dismiss Baxter's retaliation claims is granted.

     Both state and city law prohibit employers from retaliating
against employees for opposing unlawful discrimination.  N.Y.
Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7).  Under the
NYCHRL and NYSHRL, a plaintiff claiming retaliation must
plausibly allege "that she took an action opposing her
employer's discrimination and that, as a result, the employer
engaged in conduct that was reasonably likely to deter a person
from engaging in such action." Qorrolli, 124 F.4th at 122
(citation omitted).  This is a "similar but slightly broader

17

standard" than the <u>prima facie</u> standard applied to claims under
Title VII.[6]  <u>Id.</u> (citation omitted).

"[W]hen an employee communicates to her employer a belief
that the employer has engaged in a form of employment
discrimination, that communication <u>virtually always</u> constitutes
the employee's <u>opposition</u> to the activity."  <u>Littlejohn</u>, 795
F.3d 297, 312-13 (2d Cir. 2015) (citation omitted).  As to
causation, under both state and local law, a plaintiff need only
allege that her protected activity was a motivating factor
behind the defendant's retaliatory action.  <u>See</u> <u>Mihalik</u>, 715
F.3d at 113; <u>see also</u> <u>Lively v. Wafra Inv. Advisory Grp., Inc.</u>,
180 N.Y.S.3d 92, 94 (1st Dep't 2022).

The FAC alleges that Baxter engaged in activity protected
by both state and city law in her February 2023 email to Shalvi
and her April 2023 meeting with Levy.  Baxter complained about
allegedly discriminatory and retaliatory treatment she faced at
Swiftshift, including "unfair pay," as well as "retaliatory

_____

[6] To plead a retaliation claim under Title VII, a plaintiff must
allege that "(1) she was engaged in protected activity; (2) the
employer was aware of that activity; (3) the employee suffered a
materially adverse action; and (4) there was a causal connection
between the protected activity and that adverse action."
<u>Qorrolli</u>, 124 F.4th at 122 (citation omitted).  A "materially
adverse action" is one that "might have dissuaded a reasonable
worker from making or supporting a charge of discrimination."
<u>Carr v. M.Y.C. Transit Auth.</u>, 76 F.4th 172, 179 (2d Cir.
2023) (citation omitted).

conduct" she faced after she obtained the October 2022 TRO "to remove [Shalvi] from the home."  Baxter argues that the defendants retaliated against her for engaging in this protected activity by firing her in June 2023 and then by subjecting her to alleged "post-termination" retaliation in 2024.

       1.   Baxter's Firing

First, Baxter fails to allege a causal connection between her protected activity and her firing.  The FAC concedes that Swiftshift lost revenue in 2022, resulting in cuts to an entire team at Golden Care (a business Swiftshift had acquired).  It further admits that Baxter was told when she was fired that the reason for her firing was the elimination of the entire HR department where she worked.

Baxter contends that she has plausibly alleged a causal connection between her protected activity and her firing on the basis of the temporal proximity between her April 2023 complaints to Levy and the June 2023 termination of her employment.  While temporal proximity is ordinarily sufficient to plead a causal connection between protected activity and an adverse employment action, Banks v. Gen. Motors, LLC, 81 F.4th 242, 277 (2d Cir. 2023), it is not sufficient here.  Baxter does not dispute that the defendants eliminated the entire HR department in June 2023, and for that reason terminated Baxter's

employment.  The defendants pointed out this deficiency in their
motion to dismiss her initial complaint,[7] and the FAC pleads no
facts to suggest that the reason Swiftshift gave her for the
termination of her employment was not the true one.  While a
plaintiff has no burden to anticipate a defendant's
justification for its actions, a court is not required to ignore
it when that justification appears in the complaint and
eliminates any inference of causation.  Under these
circumstances, the temporal proximity between Baxter's
complaints and her firing is on its own insufficient to infer a
causal connection to support her retaliation claim under state
and local law.

 2.  Post-Termination Retaliation

Baxter also fails to state a claim that defendants
subjected her to what she calls "post-termination retaliation."
An employer may subject an employee to an adverse action even
after the employment relationship is terminated.  This follows
from the more general proposition that "[a]n employer can
effectively retaliate against an employee by taking actions not

_____

[7] The defendants' motion to dismiss argued that the initial
complaint "fails to plead any credible allegation that [Baxter]
was terminated as a result of her complaint to the Board" and
that Baxter "admits that her employment with SwiftShift was
terminated on June 5, 2023 because SwiftShift's HR department
was being eliminated."

directly related to his employment or by causing him harm
<u>outside</u> the workplace." <u>Burlington N. & Santa Fe Ry. Co. v.</u>
<u>White</u>, 548 U.S. 53, 63 (2006).

The FAC alleges principally that defendants engaged in
post-termination retaliation by interfering with the New Jersey
family court proceeding involving Shalvi and Baxter.[8]  First,
Baxter alleges that the defendants failed to provide the New
Jersey court with information "demonstrating any decline in
revenue . . . to explain Baxter's" pay cut or firing.  The FAC
does not allege when the defendants failed to provide this
information.  Moreover, it does not allege that the defendants
were required to provide such information in the family court
proceeding.  Similarly, the FAC alleges that Swiftshift provided
Shalvi with a loan that covered, in part, the cost of his
divorce attorneys.  Neither of these allegations plausibly
allege interference in the family court proceeding, much less
"conduct that was reasonably likely to deter a person from

---

[8] In addition to the allegations concerning interference in the
New Jersey family court proceeding, Baxter alleges that the
defendants fired a <u>different</u> employee of Swiftshift in August
2024, after that employee's husband overheard Shalvi threaten
Baxter and confronted Shalvi about that behavior.  This conduct,
which occurred more than one year after Baxter was fired and was
taken against another employee, to whom Baxter is not alleged to
have any special relation, is not reasonably likely to deter a
person from engaging in protected activity.  <u>See</u> <u>Qorrolli</u>, 124
F.4th at 122.

engaging" in protected activity.  Qorrolli, 124 F.4th at 122
(citation omitted).

Finally, Baxter alleges that the defendants failed to
comply with a wage garnishment order issued by New Jersey state
court in March 2024 and served on Swiftshift that same month.
The FAC relatedly asserts that the defendants reclassified
Shalvi as an independent contractor in October 2024, following
the initiation of this action.  The wage garnishment order was
issued nearly a year after Baxter's conversation with Levy and
in connection with separate litigation.  Accordingly, Baxter has
failed to allege that Swiftshift's conduct was causally
connected to Baxter's protected activity or that it would deter
a reasonable employee from engaging in protected activity.
Baxter's claims for retaliation are therefore dismissed.

    D.    Katsav

Finally, the defendants contend that Baxter has failed to
allege that Katsav was an "employer" under the NYSHRL and NYCHRL
and move to dismiss all claims brought against Katsav under
these statutes.[9]  For the reasons that follow, Baxter has not
plausibly alleged that Katsav participated in the conduct giving

---

[9] The defendants make no specific argument that Katsav is not an
employer or subject to liability under the NYLL.

rise to either her discrimination claims, which survive, or her retaliation claims, which do not.

State and local law both provide for "liability for individual employees for discrimination when those employees have some supervisory role over the victim of their discrimination." Russell v. N.Y. Univ., 42 N.Y.3d 377, 389 (N.Y. 2024); see also Feingold v. New York, 366 F.3d 138, 157 (2d. Cir. 2004).  In addition to providing for direct liability of a supervisor, both the NYSHRL and NYCHRL prohibit aiding and abetting unlawful discriminatory or retaliatory conduct.  N.Y. Exec. L. § 296(6); N.Y.C. Admin. Code § 8-107(6).  To state an aiding-and-abetting claim under the NYSHRL, a plaintiff must allege 1) an underlying violation, that is, that the employer or an individual with some supervisory authority violated the NYSHRL, and 2) that the defendant aided and abetted that conduct by "actually participat[ing] in the conduct giving rise" to the underlying discrimination or retaliation claim.  Feingold, 366 F.3d at 158 (citation omitted).  The standard for an NYCHRL aiding-and-abetting claim is the same.  Id.  In such circumstances, a person without supervisory authority over the plaintiff-employee may be liable.  Id.

The FAC does not allege that Katsav, who it identifies as the Chair of Swiftshift's Board of Directors, was Baxter's

supervisor.  It also fails to allege that he aided and abetted
the alleged discriminatory and retaliatory conduct Baxter faced.
As to Baxter's claims of discrimination, the FAC alleges in a
conclusory fashion that Katsav "was involved in all decisions
regarding hiring and firing Swiftshift employees" and regarding
"compensation decisions," and thus that he "approved"
Swiftshift's decision to pay "Baxter less than her male peers."
These conclusory assertions are insufficient to plead Katsav's
actual participation in the discriminatory treatment against
Baxter described in the FAC.  Id. at 157.

    As to retaliation, the FAC alleges that Katsav received
Baxter's February 2023 complaint, decided to hire outside
counsel to conduct an investigation, and arranged the meeting
between Baxter and that attorney in April 2023.  It additionally
alleges that Levy, who was the investigating attorney, told
Baxter to report any further discriminatory or retaliatory
conduct to Katsav directly.  Far from suggesting that Katsav
engaged in retaliatory treatment of Baxter, these allegations
describe a responsible and unobjectionable response by Katsav to
Baxter's complaints.

    Baxter first argues that Katsav is liable for
discrimination and retaliation because, by virtue of his
ownership interest in Swiftshift, he is an employer as defined

under state and local law.  While the NYCHRL and NYSHRL "provide for broad vicarious liability for employers . . . that liability does not extend to individual owners, officers, employees, or agents of a business entity" simply by virtue of those relationships.  Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 462 (2021).

Baxter further contends that Katsav aided and abetted discriminatory conduct because he was aware of the discrimination complaints she submitted and failed to adequately investigate and remedy those complaints.  See Feingold, 366 F.3d at 158.  To the contrary, the FAC's sole allegation with respect to Katsav is that he hired an outside investigator in response to Baxter's complaints of discrimination.  This action -- which addressed the plaintiff's complaints of discrimination head on -- does not support a claim that Katsav aided and abetted either discrimination or retaliation.

II.  Motion to Strike

The defendants also move to strike certain allegations from the FAC.  Specifically, they seek to strike allegations of unpaid wages that are outside the NYLL's statute of limitations and allegations concerning domestic violence and the couple's family court proceedings and alleged "post-termination retaliation."

25

Under Fed. R. Civ. P. 12(f), courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12. Allegations may be "stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice."  Brown v. Maxwell, 929 F.3d 41, 51 n.42 (2d Cir. 2019) (citation omitted).  Motions to strike under Rule 12(f) are generally disfavored; in deciding whether to strike an allegation from the pleading for impertinence or immateriality "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible."  Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

The Court declines to strike the material.  The allegations bear at least minimally on Baxter's claim for discrimination and retaliation.

## Conclusion

The defendants' March 7, 2025 motion to dismiss is granted in part and the motion to strike is denied. The FAC's claims of discrimination remain. Its claims under the NYLL and for retaliation are dismissed. All claims against defendant Katsav are dismissed.


Dated:    New York, New York
          June 13, 2025

                               _____
                                      DENISE COTE
                               United States District Judge

27